TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 95-616 |
| of | : | |
| | : | November 8, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE QUENTIN L. KOPP, MEMBER OF THE CALIFORNIA STATE SENATE, has requested an opinion on the following question:

May a law firm that lobbies a state agency on behalf of a client be retained by the agency to represent it in litigation?

CONCLUSION

A law firm that lobbies a state agency on behalf of a client may be retained by the agency to represent it in litigation, provided the law firm meets the disclosure and consent requirements pertaining to the representation of adverse interests.

ANALYSIS

Pursuant to the Political Reform Act of 1974 (Gov. Code, §§ 81000-91015),[1] a law firm may register as a "lobbying firm"[2] to lobby on behalf of clients for or against state legislative or

_____

[1]All references hereafter to the Government Code are by section number only.

[2]Section 82038.5 defines "lobbying firm" as follows:

"`Lobbying firm' means any business entity, including an individual contract lobbyist, which

1.                                                                    95-616

administrative actions. On occasion a state agency may seek to employ, with the Attorney General's consent (see §§ 11040-11044), private legal counsel to meet agency needs. The question presented for resolution is whether a law firm may be employed by a state agency to represent it in litigation when the law firm has been retained to lobby the agency on behalf of a client. We conclude generally that the law firm may act in the dual capacities of a lobbying firm and legal counsel for a state agency.

For purposes of this analysis, we will assume that the state agency which seeks to retain the law firm for litigation purposes is lobbied from time to time by the firm, that an attorney-client relationship has been formed between the law firm's attorneys and the party for whom the lobbying has been and will be performed, that the officers and employees of the agency do not have a financial interest in the law firm, and that the contract for legal representation will be preceded by the consent of the Attorney General to the employment of private counsel and will be executed in accordance with the provisions of the Public Contract Code.

1. The Law Firm Acting As A Lobbying Firm

The Act declares that "[p]ublic officials, whether elected or appointed, should perform their duties in an impartial manner, free from bias caused by their own financial interests or the financial interests of persons who have supported them . . . ." (§ 81001, subd. (b)). Among the specific purposes of the Act is the following: "The activities of lobbyists should be regulated and their finances disclosed in order that improper influences will not be directed at public officials." (§ 81002, subd. (b).) Toward that end, the Act contains provisions which specifically proscribe certain conduct by lobbyists[3] and lobbying firms. Such conduct would include making gifts aggregating more than $10 to

---

meets either of the following criteria:

"(1) The business entity received or becomes entitled to receive any compensation, other than reimbursement for reasonable travel expenses, for the purpose of influencing legislative or administrative action on behalf of any other person, and any partner, owner, officer, or employee of the business entity is a lobbyist.

"(2) The business entity received or becomes entitled to receive any compensation, other than reimbursement for reasonable travel expenses, to communicate directly with any elective state official, agency official, or legislative official for the purpose of influencing legislative or administrative action on behalf of any other person, if a substantial or regular portion of the activities for which the business entity receives compensation is for the purpose of influencing legislative or administrative action."

[3]Section 82039 defines "lobbyist" as follows:

"`Lobbyist' means any individual who is employed or contracts for economic consideration, other than reimbursement for reasonable travel expenses, to communicate directly or through his or her agents with any elective state official, agency official or legislative official for the purpose of influencing legislative or administrative action, if a substantial or regular portion of the activities for which he or she received consideration is for the purpose of influencing legislative or administrative action. No individual is a lobbyist by reason of activities described in Section 86300."

an agency official in a calendar month, acting as an agent or intermediary in the making of any gift, or arranging for the making of any gift by any other person.  (§ 86203.)  In addition, under the terms of section 86205, a lobbyist or lobbying firm is forbidden to do any of the following activities:

> "(a)    Do anything with the purpose of placing any elected state officer, legislative official, agency official, or state candidate under personal obligation to the lobbyist, the lobbying firm or the lobbyist's or the firm's employer.

> "(b)    Deceive or attempt to deceive any elected state officer, legislative official, agency official, or state candidate with regard to any material fact pertinent to any pending or proposed legislative or administrative action.

> "(c)    Cause or influence the introduction of any bill or amendment thereto for the purpose of thereafter being employed to secure its passage or defeat.

> "(d)    Attempt to create a fictitious appearance of public favor or disfavor of any proposed legislative or administrative action or to cause any communication to be sent to any elected state officer, legislative official, agency official, or state candidate in the name of any fictitious person or in the name of any real person, except with the consent of such real person.

> "(e)    Represent falsely, either directly or indirectly, that the lobbyist or the lobbying firm can control the official action of any elected state officer, legislative official, or agency official.

> "(f)    Accept or agree to accept any payment in any way contingent upon the defeat, enactment, or outcome of any proposed legislative or administrative action."

None of the foregoing activities would necessarily be involved when a law firm, which is also a registered lobbying firm, is retained by a state agency to perform litigation services.  The fact that the law firm has been retained by one of its clients to influence the administrative actions of that agency does not, under the Act, preclude it from also acting as legal counsel for the agency.[4]

We have assumed that no state agency officer or employee has or would have a financial interest in the law firm, such as having a spouse who is a partner in the firm.  Both the Act (§§ 87100, 87103) and other laws (e.g., § 1090) prohibit public officials from acting when personal conflicts of interest are present under a variety of situations.

---

Section 86300 concerns the activities of certain public officials, state employees, members of the media, and church representatives.

[4]The dichotomy between a law firm's lobbying activity and its legal representation of a client is reflected in regulations promulgated by the Fair Political Practices Commission, the entity charged with administering the Act. Section 18614 of title 2 of the California Code of Regulations states that payments to a lobbying firm for litigation services shall not be considered payments for lobbying services that must be reported to the commission.

2. The Law Firm As Legal Counsel

We now turn to the Rules of Professional Conduct of the State Bar of California[5] to determine whether these rules, which govern the conduct of those admitted to practice law in this state,[6] limit the ability of a law firm to perform legal services for a state agency which it lobbies on behalf of another client.

Rule 3-310, which concerns avoiding the representation of adverse interests, provides in pertinent part as follows:

"(A) For purposes of this rule:

(1)'Disclosure' means informing the client or former client of the relevant circumstances and of the actual and reasonably foreseeable adverse consequences to the client or former client;

(2) `Informed written consent' means the client's or former client's written agreement to the representation following written disclosure;

(3) `Written' means any writing as defined in Evidence Code section 250.

"(B) A member shall not accept or continue representation of a client without providing written disclosure to the client where:

(1) The member has a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; or

(2) The member knows or reasonably should know that:

a) the member previously had a legal, business, financial, professional, or personal relationship with a party or witness in the same matter; and

(b) the previous relationship would substantially affect the member's representation; or

---

[5]All references hereafter to the Rules of Professional Conduct are by rule number only.

[6]For a willful breach of the rules, the State Bar Board of Governors has the power to discipline members as provided by law. (Rule 1-100.)

(3) The member has or had a legal, business, financial, professional, or personal relationship with another person or entity the member knows or reasonably should know would be affected substantially by resolution of the matter; or

(4) The member has or had a legal, business, financial, or professional interest in the subject matter of the representation.

"(C) A member shall not, without the informed written consent of each client:

(1) Accept representation of more than one client in a matter in which the interests of the clients potentially conflict; or

(2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict; or

(3) Represent a client in a matter and at the same time in a separate matter accept as a client a person or entity whose interest in the first matter is adverse to the client in the first matter.

". . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

Whether Rule 3-310 is applicable when a state agency seeks to retain a law firm to represent it in litigation even though the firm has been retained to lobby the agency on behalf of a client would depend upon the individual facts involved. The circumstances may call for written disclosure by the law firm or require the informed written consent of each client.[7] The situation most likely to call for written disclosure would be when "[t]he member has or had a legal, business, financial, or professional interest in the subject matter of the representation." (Rule 3-310(B)(4).) The more stringent requirement of informed written consent would typically arise when the law firm "[r]epresents a client in a matter and at the same time in a separate matter accept[s] as a client a person or entity whose interest in the first matter is adverse to the client in the first matter." (Rule 3-310(C)(3).)[8] Regardless, however, of the

---

[7]The party for whom the law firm performs lobbying services is protected by the disclosure and consent provisions of the rule if it is a "client" of the firm. Whether an attorney has formed a formal or defacto attorney-client relationship with a party is a question of fact. (See *In re Marriage of Zimmerman* (1993) 16 Cal.App.4th 556, 564; *People v. Thoi* (1989) 213 Cal.App.3d 689, 699.)

[8]The official commentary with respect to Rule 3-310 states that "[s]ubparagraph (C)(3) is intended to apply to representations of clients in both litigation and transactional matters."

particular circumstances involved, it is clear that Rule 3-310 does not *preclude* the type of dual representation under consideration herein.

In answer to the question presented, therefore, we conclude that a law firm which lobbies a state agency on behalf of a client may be retained by the agency to represent it in litigation, provided the law firm meets the disclosure and consent requirements pertaining to the representation of adverse interests.[9]

\* \* \* \* \*

---

[9]It follows from our conclusion that neither the Act nor the rules would prohibit a law firm from representing a state agency when it has been retained by a client to lobby the Legislature or a different state agency.